IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMED FAWZI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-CV-01812-CRC |
| | ) | |
| - against - | ) | |
| | ) | |
| AL JAZEERA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AL JAZEERA MEDIA
NETWORK'S MOTION TO DISMISS THE COMPLAINT**

**DLA Piper LLP (US)**
1251 Avenue of the Americas     500 8th Street, N.W.
New York, New York 10020     Washington, D.C. 20004
*Attorneys for Defendant Al Jazeera Media Network*

## CORPORATE DISCLOSURE STATEMENT

Al Jazeera Media Network certifies that it does not have a parent corporation and that no publicly held corporation owns more than ten percent of its stock, nor does it, or any of its subsidiaries or affiliates, have any publicly traded securities.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

PLAINTIFF'S JURISDICTIONAL ALLEGATIONS ................................................... 3

THE TERMS OF PLAINTIFF'S EMPLOYMENT, RESIGNATION AND
    SETTLEMENT ....................................................................................................... 4

PLAINTIFF'S EFFORT TO SERVE PROCESS ........................................................... 5

STANDARDS OF REVIEW .......................................................................................... 6

ARGUMENT .................................................................................................................. 8

I.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED.
      R. CIV. P 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OVER AJMN ........ 8

     A.     AJMN Is Not Subject To The General Jurisdiction Of This Court ....................... 8

     B.     Plaintiff Has Not Pled, And Cannot Plead, Sufficient Facts To Allow This
         Court To Assert Specific Jurisdiction Over AJMN ............................................ 11

II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED.
      R. CIV. P 12(B)(5) FOR IMPROPER SERVICE OF PROCESS ................................... 14

III.   ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
      ON *FORUM NON CONVENIENS* GROUNDS ............................................................ 17

     A.     Courts Have Routinely Dismissed Analogous Employee Disputes In Favor
         Of Adjudication In Qatar, As An Adequate Alternative Forum .......................... 19

     B.     The Private And Public Interest Factors Weigh More Substantially In
         Favor Of Adjudication Of This Action In Qatar, Than In Previously
         Dismissed Actions ............................................................................................ 23

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ansell Healthcare, Inc. v. Maersk Line*,
    545 F. Supp. 2d 339 (S.D.N.Y. 2008)................................................................ 16-17

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. Of Tex.*,
    134 S. Ct. 568 (2013)................................................................................18

*Bender v. Broadcom Corp.*,
    No. 09-CV-1147, 2009 WL 3571286 (N.D. Cal. 2009) ........................................15

*Blumenthal v. Drudge*,
    992 F. Supp. 44 (D.D.C. 1998) ...................................................................8

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016)......................................................................10

*Burger King Corp. v. Rudzewiucz*,
    471 U.S. 462 (1985)...............................................................................13

*Busby v. Capital One, N.A.*,
    932 F. Supp. 2d 114 (D.D.C. 2013) ............................................................16

*Colston v. First Guarantee Commercial Mortg. Corp.*,
    665 F. Supp. 2d 5 (D.D.C. 2009) ...............................................................14

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ........................................................................ 8-10

*Duarte v. Nolan*
    ("*Duarte I*"), 190 F. Supp. 3d 8 (D.D.C. 2016) (Cooper, *J.*)............................. 6, 8, 11, 12-13

*Duarte v. Nolan*
    ("*Duarte II*"), No. 15-CV-01396, 2016 WL 3951058 (D.D.C. July 20, 2016) (Cooper,
    *J.*) ...............................................................................................10

*El-Fadl v. Central Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996)....................................................................23

*Fraser v. High Liner Foods (USA), Inc.*,
    No. 08-1562(L), 2009 WL 1951894 (Fed. Cir. Sept. 8, 2009) .........................14, 16

*Freedom Watch, Inc. v. Org. of the Petrol. Exp. Countries*,
    766 F.3d 74 (D.C. Cir. 2014)......................................................................7

*Fujitsu Ltd. v. Belkin Intern., Inc.*,
   782 F. Supp. 2d 868 (N.D. Cal. 2011) ..................................................................17

*\*Ghannoum v. Qatar Airways Q.C.S.C.*,
   No. 13-CV-2994, 2014 WL 4354436 (S.D.Tx. Sept. 2, 2014) ..............................19-21, 23-24

*Goodyear Dunlap Tires Op's, S.A. v. Brown*,
   564 U.S. 915 (2011).........................................................................................13

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)..........................................................................................22

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408 (1984)...........................................................................................8

*Hilska v. Jones*,
   217 F.R.D. 16 (D.D.C. 2003)................................................................................16

*Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co.*,
   878 F. Supp. 2d 1252 (S.D. Ala. 2012)....................................................................16

*J.B. Custom, Inc. v. Amadeo Rossi, S.A.*,
   No. 10-CV-326, 2011 WL 2199704 (N.D. Ind. June 6, 2011) .................................16

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011)..........................................................................................13

*Jackson v. American Univ., Cairo*,
   52 Fed. Appx. 518 (D.C. Cir. 2002) .........................................................................7

*KPMG Fin. Advisory Servs. Ltd. v. Diligence LLC*,
   No. 05-CV-2204, 2006 WL 335768 (D.D.C. Feb. 14, 2006) ...................................7

*Larsen v. Mayo Med. Ctr.*,
   218 F.3d 863 (8th Cir. 2000) ...............................................................................15

*\*Livnat v. Palestinian Authority*,
   No. 15-5025, 2017 WL 1101106 (D.C. Cir. Mar. 24, 2017) .....................................6, 9-10, 14

*Mann v. Castiel*,
   681 F.3d 368 (D.C. Cir. 2012) ..............................................................................14

*MBI Grp., Inc. v. Credit Foncier Du Cameroun*,
   558 F. Supp. 2d 21 (D.D.C. 2008)......................................................................7, 18, 21

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co. Ltd.*,
   484 U.S. 97 (1987)............................................................................................14

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) .................................................................... 10-11

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................7

*Reuber v. United States*,
    787 F.2d 599 (D.C. Cir. 1986) .......................................................6

*Sinochem Intern. Co. Ltd. v. Malaysian Intern. Shipping. Corp.*,
    549 U.S. 422 (2007) ......................................................................18

*Stinecipher v. United States*,
    239 F.R.D. 282 (D.D.C. 2006) ......................................................14

*Terry v. Dewine*,
    75 F. Supp. 3d 512 (D.D.C. 2014) ................................................11

*Triple Up Limited v. Youku Tudou, Inc.*,
    No. 16-CV-159, 2017 WL 354093 (D.D.C. Feb. 22, 2017) ...................14

*\*Kinney v. Occidental Oil & Gas Corp.*,
    No. 01-CV-05185, 2003 U.S. Dist. LEXIS 28610 (C.D.Ca. May 8, 2003), *aff'd,* 109
    Fed. Appx. 135 (9th Cir. 2004) ............................................. 19, 21-24

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) .................................................................13

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*,
    451 F. Supp. 2d 585 (S.D.N.Y. 2006) ...........................................15

## STATUTES

D.C. Code § 13-423(a) ......................................................................... 11-12

## OTHER AUTHORITIES

Fed. R. Civ. P. 4 ................................................................................ 15-17

Fed. R. Civ. P. 12 ................................................................................1, 25

Al Jazeera Media Network ("AJMN") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(5), and on *forum non conveniens* grounds.

## INTRODUCTION

This case has no connection to this forum.   It involves claims arising from an employment relationship that was formed in Qatar, and then consensually terminated there, between Mohamed Fawzi ("Plaintiff"), an Egyptian citizen who currently resides in Virginia, and AJMN, a corporation with its headquarters and principal place of business in Qatar.   The events that allegedly caused Plaintiff's injury were acts of the Egyptian government in Egypt. And Plaintiff's allegations that AJMN failed to take adequate measures to secure his safety while working in Egypt are based on conduct, or omissions, that allegedly occurred in Qatar or Egypt. These claims are, moreover, governed by an employment contract that requires disputes to be litigated in Qatar, under Qatari law.   The witnesses and evidence related to this dispute are similarly to be found in Qatar or Egypt, with the exception of Plaintiff, who himself is located outside of this forum.

Plaintiff is a cameraman who has "served in hot spots all over the globe."  Compl. 1.  He alleges that in September 2013, while employed in Qatar by AJMN, he accepted a post in Cairo to perform services for one or more "Doha-based" news and media outlets owned by AJMN.  *Id.* ¶¶ 9(c), 20, 24-28.[1]  This was a time of extraordinary and well-publicized political ferment in Egypt.   In the months preceding his posting to Egypt, and continuing through the course of his employment there, Plaintiff alleges that Egyptian officials engaged in a crackdown on AJMN-owned companies for their alleged reporting of "fake news" unfavorable to the controlling Sisi

---

[1]     The Complaint does not contain a clear statement with regard to those entities for which Plaintiff worked during his time in Egypt.

government, and for allegedly providing sympathetic news coverage to the Muslim Brotherhood, the organization with which the ousted Morsi regime had been associated. *Id.* ¶¶ 24-26. (After assuming power, the Sisi government designated the Muslim Brotherhood as a terrorist organization on December 25, 2013).[2] *Id.* ¶ 46.

Plaintiff claims to have had "no idea" that the Sisi government had installed itself in power at the time he was asked to work in Cairo, or that an "antagonistic relationship" existed between it and AJMN. *Id.* ¶ 14. He alleges that AJMN failed to disclose these facts to him, misrepresented the legal status of the AJMN-owned companies operating in Egypt, and breached the duty of care it owed to him while he was working in Cairo. *Id.* ¶¶ 55-74. Plaintiff further claims that his affiliation with AJMN-owned companies in Egypt forced him to flee persecution there, and resulted in his trial and conviction *in absentia* by the Egyptian government for his alleged role in broadcasting "false rumors," "fabricating news," "operating without a permit," and "promoting and supporting a terrorist organization (namely the Muslim Brotherhood)." *Id.* ¶¶ 49-52.

AJMN considers the safety of its journalists and employees, who often place themselves at risk while working in war zones and politically unstable environments so as to bring important news stories to the consciousness of the world, to be a matter of great importance. AJMN is also mindful of the fact that some of its employees have faced false charges and politically-motivated prosecutions while working in Egypt, and it has for this reason devoted considerable resources to campaign for press freedom there and elsewhere. But Plaintiff's claims, which take issue with his treatment at the hands of the Egyptian government, have no place in this Court. In fact, more

---

[2] The United States has never designated the Muslim Brotherhood as a Foreign Terrorist Organization. *See* Dep't of State, Bureau of Counterterrorism, *Foreign Terrorist Organizations*, available at http://bit.ly/2m3KlCL (last accessed Mar. 10, 2017).

than two years after leaving Egypt, during which time he had resumed his employment with AJMN in Doha, Plaintiff voluntarily resigned and signed a settlement agreement with the company, dated February 22, 2016, in which he expressly waived any claims arising from his employment with AJMN and any of its affiliates, companies, or bureaus.  Further, contrary to the contentions in his Complaint, this was not an acrimonious parting; upon resigning from his employment with AJMN to seek job opportunities in the United States, he expressly thanked the company in the documentation executed in connection with his settlement for the professional opportunities that had been afforded to him.

In any event, the issues raised by this suit should not be adjudicated in this forum, which lacks any connection to the parties or claims.  The Complaint should be dismissed (i) for lack of jurisdiction over AJMN, a Qatar-based corporation; (ii) for failure to properly effectuate service of process; and (iii) on forum *non conveniens* grounds, given the availability of an adequate, alternative and vastly more convenient forum, initially chosen by Plaintiff himself, in Qatar.

### PLAINTIFF'S JURISDICTIONAL ALLEGATIONS

Plaintiff alleges that AJMN is "headquarter[ed]" and "based" in Qatar (Compl. ¶¶ 1, 5) and owns and operates a "flagship Arabic-language television news channel based in Qatar" (*id.* ¶ 9(a)) and "an English-language television news channel also based in Doha" (*id.* ¶ 9(b)). Plaintiff also alleges that AJMN is a Qatari "government-owned enterprise."  *Id.* ¶¶ 6-8.  The only allegation in the Complaint attempting to link AJMN to this forum is the following (factually inaccurate) sentence:  "Al Jazeera has maintained a local office here in Washington, D.C. for approximately ten years and has hired people here and has rented offices and so it has a history of substantial contact with this forum."  *Id.* ¶ 2.  In fact, AJMN neither maintains a local office in the District nor has a history of "substantial contact" with this forum.  *See* Declaration of Farah A. Al-Muftah ("Al Muftah Decl.") ¶¶ 3, 6-12 (dated Apr. 6, 2017).   And such

allegations, even if true, would be plainly insufficient to establish general jurisdiction in any event. *See infra.* at I.A.

Plaintiff, for his part, alleges that his domicile is also located outside of this forum, in Virginia. Compl. ¶ 1.

Plaintiff contends that AJMN's failure to prevent his arrest and two-day detention by the Egyptian government, and his subsequent conviction *in absentia*, was attributable to conduct or omissions occurring in Qatar and Egypt. *Id.* ¶¶ 13-54. He alleges that he suffered harm in these countries, and that lingering effects of this harm followed him to Virginia, the domicile to which he ultimately chose to travel more than two years after the events that allegedly gave rise to his injuries. *Id.* ¶¶ 49-53, 61. Plaintiff does not allege that AJMN undertook any activity in the District of Columbia, or aimed at the District of Columbia, that is causally related to his injuries, nor does he allege that he suffered any injury here. *See generally id.* ¶¶ 1-81.

## THE TERMS OF PLAINTIFF'S EMPLOYMENT, RESIGNATION AND SETTLEMENT

Plaintiff's employment contract with AJMN, which is referenced throughout the Complaint, was executed on January 25, 2004. Al-Muftah Decl. ¶ 15 & <u>Ex. D</u>.[3] The contract specifies that AJMN "may transfer or second the employee to any of its offices, departments or sections . . . as deemed appropriate by the channel or send the employee for official tasks abroad." *Id*. <u>Ex. D</u> at ¶ 4. Any dispute "in relation to this contract" that cannot be resolved by "all possible efforts" shall be referred to "the judicial authority and laws of the State of Qatar." *Id.* <u>Ex. D</u> at ¶ 19.

---

[3]    (The contract was signed by AJMN's predecessor-in-interest, Al Jazeera Satellite Channel (*see id.* ¶¶ 4-5 & <u>Exs. A & B</u>).)

Plaintiff tendered a resignation letter concerning his employment with AJMN on December 31, 2015, in contemplation of accepting a new position in the United States.  In this letter, he stated: "I have enjoyed being a part of the team and am thankful for the opportunities you have given me during my time here and look forward to my transfer to Washington D.C. with Al Jazeera America."  *Id*. ¶ 16 & Ex. E.  On February 14th and 22nd of 2016, Plaintiff signed two documents constituting a "final settlement" pursuant to Qatari Labor Law, "without admission of liability on the part on Aljazeera Network or any of its shareholders or affiliates[,] companies[,] or bureau[s]," pursuant to which Plaintiff accepted a monetary payment of 272,774.46 Qatari riyals (approximately 74,907 U.S. dollars) as "full and final settlement of all claims, costs, expenses and/or right of action of any kind (if any) whether contractual, statutory, or otherwise and whether arising now or in the future and whether known or discovered or arising after the date of signing this form" *Id.* ¶¶ 17-18 & Exs. F-G.  Plaintiff also agreed to "release and hold harmless Aljazeera and its subsidiaries from and against any claims, losses, costs, damages, or expenses (including legal fees) incurred or to be incurred by Aljazeera or its subsidiaries, whether arising in the course of or after my employment with Aljazeera, where such claims are in contract, tort or under any applicable law(s)." *Id.* Ex. F at ¶ 2.  Notwithstanding these provisions, Plaintiff filed his Complaint seven months later, on September 12, 2016.

### PLAINTIFF'S EFFORT TO SERVE PROCESS

Plaintiff initially attempted to serve AJMN by mailing a copy of the summons and Complaint to 1200 New Hampshire Ave, N.W., Washington, D.C. 20036 (*see* ECF No. 4)—an address that has been affiliated with Al Jazeera International (USA), Inc., a Delaware corporation that is legally distinct from AJMN and not named as a defendant.  *See* Al-Muftah Decl. ¶¶ 11-12; *see also* Declaration of Douglas W. Mateyaschuk ("Mateyaschuk Decl.") ¶¶ 3-5 & Exs. 1-3 (dated Apr. 6, 2017).  After the summons was returned unexecuted (ECF No. 4), it was reissued

at Plaintiff's request, and then sent together with the Complaint to a post office box affiliated with AJMN in Doha, Qatar, via DHL courier (ECF No. 7).  Plaintiff did not submit a proof of service affidavit for this mailing, but rather only a UPS sales receipt and tracking information from DHL, indicating delivery of a package in Doha on February 8, 2017 that was signed for by "Azza" (ECF No. 7 & 7-1).[4]  Plaintiff made no other attempt to serve process.

## STANDARDS OF REVIEW

1.  <u>Personal Jurisdiction</u>.  "[O]nce a defendant timely asserts the absence of personal jurisdiction, the plaintiff has the burden to prove that jurisdiction is properly exercised."  *Reuber v. United States*, 787 F.2d 599, 599 (D.C. Cir. 1986) (citations omitted).  "To overcome a motion to dismiss for lack of personal jurisdiction, 'a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face.'"  *Duarte v. Nolan* ("*Duarte I*"), 190 F. Supp. 3d 8, 11-12 (D.D.C. 2016) (Cooper, *J.*) (quoting *Moldauer v. Constellation Brands, Inc.*, 87 F. Supp. 3d 148, 152-53 (D.D.C. 2015)).  "Conclusory statements or a bare allegation of conspiracy or agency do not satisfy this burden."  *Livnat v. Palestinian Authority*, No. 15-5025, 2017 WL 1101106, at *9 (D.C. Cir. Mar. 24, 2017) (internal quotations and citation omitted).  In deciding whether to grant a 12(b)(2) motion to dismiss for lack of personal jurisdiction without first conducting an evidentiary hearing, the "court must resolve factual disputes in favor of the plaintiff . . . but it need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts."  *Id.* (internal quotations and citations omitted).

---

[4]    Plaintiff's counsel also emailed a copy of the Complaint to declarant Farah A. Al-Muftah on December 3, 2016 with the following note: "Please find attached the lawsuit we filed on behalf of our client (Case No. 1:16-cv-01812-CRC)."  Al-Muftah Decl. ¶¶ 13-14 & <u>Ex. C</u>.  In apparent recognition of the fact that such an email does not pass muster under the Federal Rules, it was never filed on the docket by Plaintiff, nor did he claim that it constituted effective service of process—as it does not.  *See infra* at II.

2. <u>Service of Process</u>.  "If a defendant challenges the validity of service of process, the plaintiff bears the burden to demonstrate that the procedure employed to deliver the papers satisfies the requirements of the relevant portions of Rule 4."  *Freedom Watch, Inc. v. Org. of the Petrol. Exp. Countries*, 766 F.3d 74, 78 (D.C. Cir. 2014) (citations and internal quotations omitted).

3. *<u>Forum Non Conveniens</u>*.  "The *forum non conveniens* determination is committed to the sound discretion of the trial court."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  "A court first determines whether there is an adequate alternative forum and, if so, then proceeds to balance both private interest factors and public interest factors in favor of the respective forums."  *Jackson v. American Univ., Cairo*, 52 Fed. Appx. 518, 518 (D.C. Cir. 2002) (citing *Piper*, 454 U.S. at 241).  "A strong tilt towards a particular forum in the private interest factors or the public interest factors counsels towards dismissal."  *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 558 F. Supp. 2d 21, 26-27 (D.D.C. 2008) (citing *Jackson*, 52 Fed. Appx. at 518).  "Once the existence of an adequate alternative forum is established, the Court must weigh all relevant factors of private and public interest against the presumed validity of plaintiff's initial choice of forum."  *KPMG Fin. Advisory Servs. Ltd. v. Diligence LLC*, No. 05-CV-2204, 2006 WL 335768, at *1 (D.D.C. Feb. 14, 2006).  "If the balance favors the foreign forum, and if the Court is convinced that plaintiff effectively can bring its case in the alternative forum, the Court *may* dismiss the case on grounds of *forum non conveniens*."  *Id.*

**ARGUMENT**

I.   **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OVER AJMN.**

"Two forms of personal jurisdiction empower a court to exercise coercive authority over a non-resident defendant: general and specific jurisdiction." *Duarte I*, 190 F. Supp. 3d at 12.   It is a plaintiff's burden to allege "specific facts upon which personal jurisdiction may be based." *Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D.D.C. 1998).   To establish general jurisdiction, a plaintiff must plausibly allege that a non-resident defendant's "affiliations with the District of Columbia are so constant and pervasive as to render [it] essentially at home here." *Duarte I*, 190 F. Supp. 3d at 15 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (additional citations and internal quotations omitted)).   To establish specific jurisdiction, a plaintiff must plausibly allege that his or her claim "arises out of or is related to the defendant's contacts with the forum."   *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Plaintiff has failed to plead any facts sufficient to support the existence of either form of personal jurisdiction.

**A.   AJMN Is Not Subject To The General Jurisdiction Of This Court.**

As Plaintiff acknowledges, "[AJMN's] principal place of business is in [Qatar]." *Compare Duarte I*, 190 F. Supp. 3d at 14-15 *with* Compl. ¶¶ 1, 5-8.   He "has not alleged," nor can he, "that [AJMN] is organized under the laws of the District of Columbia." *Compare Duarte I*, 190 F. Supp. 3d at 14-15 *with* Compl. ¶¶ 1, 5-8.   In fact, AJMN has never rented, owned or maintained an office in the District of Columbia at any time relevant to this litigation; it is not licensed or registered to do business in the District; no official, officer or director of AJMN has ever been based in the District; nor has AJMN ever maintained a permanent staff in the District during the relevant period.   Al-Muftah Decl. ¶¶ 6-10.

Plaintiff alleges, falsely, that AJMN maintained and rented offices in the District, and made hiring and firing decisions here.  Compl. ¶ 2.  But such allegations, even if entirely accurate—as they are not—are prototypically deficient under *Daimler*, which rejected as "*unacceptably grasping*" the exercise of general jurisdiction in every state in which a corporation "engages in a substantial, continuous, and systemic course of business."  *Daimler*, 134 S. Ct. at 761 (emphasis supplied).

Instead, *Daimler* established that, except in truly exceptional circumstances, an assertion of general jurisdiction over a corporation can be sustained only in the two places where it is considered to be "at home":  the state in which it maintains its principal place of business and its state of incorporation.   134 S. Ct. at 760; *see also Livnat*, 2017 WL 1101106, at *8 ("Due process permits general jurisdiction based on only a limited set of affiliations with a forum, all analogous to an individual's domicile." (internal quotations and citation omitted)).  Plaintiff concedes, as he must, that AJMN's place of incorporation and principal place of business is in Qatar.  *See* Compl. ¶¶ 1, 5-8; *see also* Al-Muftah Decl. ¶¶ 3-5.  And even if AJMN had engaged, as alleged, in maintaining and renting staffed offices in the District, which it did not, such activity falls far short of the type of "substantial, continuous, and systematic course of business" that was found in *Daimler* to be *insufficient* to support the exercise of general jurisdiction over a non-resident corporation.  *Daimler*, 134 S. Ct. at 752, 758-59 (imputing to Daimler the conduct of its California-based subsidiary, which served as Daimler's exclusive importer and distributor of Mercedes-Benz automobiles in the United States, and finding this conduct insufficient to establish general jurisdiction); *see also Livnat*, 2017 WL 1101106, at *8-9 (affirming dismissal of complaint for lack of jurisdiction where defendant's "headquarters, officials, and primary

activities" were all located on foreign soil);[5] *Duarte v. Nolan* ("*Duarte II*"), No. 15-CV-01396,

2016 WL 3951058, at *1 (D.D.C. July 20, 2016) (Cooper, *J.*) (denying plaintiff's motion to alter

or amend dismissal for lack of jurisdiction after concluding that "new" evidence of defendant's

activities within the District, including maintaining an "active" status with D.C. Department of

Consumer and Regulatory Affairs and performing electrical work in the District, did not satisfy

the Supreme Court's "more demanding 'at home' standard for exercising general jurisdiction.");

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 628-30, 640-41 (2d Cir. 2016) (finding

defendant's contacts to the forum—consisting of "about $160 million in revenue," registration to

conduct business, leased office spaces, a staff of 30 to 70 employees, and an appointed

designated agent for service of process—to be insufficient to render it "at home" under *Daimler*

for the purpose of asserting general jurisdiction in light of its more substantial contacts to

Maryland, as its place of incorporation and principal place of business).

　　　　Nor has Plaintiff alleged that truly exceptional circumstances justify a departure from the

"'paradig[m] . . . bases for general jurisdiction'" over a corporation, *i.e.*, the place of its

incorporation and its principal place of business. *Daimler*, 134 S. Ct. at 760 (citation and

internal quotations omitted). The most frequently cited example of such an exceptional

circumstance is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). *See Daimler*, 134

S. Ct. at 755-56. The non-resident corporate defendant in *Perkins* was incorporated under the

laws of the Philippines, where it operated gold and silver mines. *Id.* at 756. After the

---

[5]　　　The Court of Appeals rejected the *Livnat* plaintiffs' claim that the Palestinian Authority ("PA") was subject to the general jurisdiction of the D.C. courts despite allegations that the PA engaged in "extensive Washington, D.C.-based activities," including significant fundraising and lobbying conduct, maintaining an ambassador here, and effectively operating a staffed D.C. office that worked for and provided services on behalf of the PA, including "processing documents related to corporate and NGO registration, passport renewal, and powers of attorney for real estate transactions." *See Livnat v. Palestinian Authority*, Appellants' Br., No. 15-7024, 2015 WL 4237653, at *8, *46-47 (D.C. Cir. filed July 13, 2015).

Philippines were occupied by the Japanese during World War II, the company ceased its operations there and the president of the company relocated to Ohio, where he kept an office, maintained the company's files, and oversaw the company's activities. *Id.* Under these exceptional circumstances, the Ohio courts exercised general jurisdiction over the corporation because Ohio had become the company's "'principal, if temporary, place of business.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11 (1984)). Here, no remotely analogous circumstances are alleged that would justify the exercise of general jurisdiction over AJMN.

"Because [Plaintiff's] allegations hardly allow the Court to infer that [AJMN] is 'at home' in Washington D.C.," and Plaintiff has not alleged truly exceptional circumstances of the sort at issue in *Perkins*, "th[is] Court may not exercise general jurisdiction over [AJMN]." *Duarte I*, 190 F. Supp. 3d at 15.

### B. Plaintiff Has Not Pled, And Cannot Plead, Sufficient Facts To Allow This Court To Assert Specific Jurisdiction Over AJMN.

"A plaintiff seeking to establish specific jurisdiction over a non-resident must establish that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *Duarte I*, 190 F. Supp. 3d at 12 (quoting *FC Inv. Grp. LC v. IFX Mkts., Ltd*, 529 F.3d 1087, 1094-95 (D.C. Cir. 2008); *see also Terry v. Dewine*, 75 F. Supp. 3d 512, 522 (D.D.C. 2014) ("A court with specific jurisdiction may only adjudicate those claims that arise out of the conduct that triggered its jurisdiction."). Here, Plaintiff's argument that his injuries at the hands of the Egyptian government are attributable to AJMN's conduct or omissions outside of this forum, in Qatar and Egypt, is fatal to the exercise of specific jurisdiction. *See* Compl. ¶¶ 13-54.

Plaintiff alludes, for instance, to e-mails and telephone calls from employees of the Cairo bureau to "network management in Doha" allegedly expressing apprehension over security issues and perceived risks in Egypt, and replies from these managers acknowledging these communications and promising measures to ensure the safety of Cairo-based personnel. *See, e.g., id.* ¶¶ 27, 30. He asserts that his injuries were the result of AJMN "continuing to broadcast" in Egypt. *Id.* ¶ 54. And to the extent that he alleges that his injury is continuing, this claim too is deeply rooted in the Middle East: "he is no longer able to work in the Middle East, which was his specialty." *Id.* ¶ 60.

None of this passes jurisdictional muster. The District of Columbia's long-arm statute permits the "exercise [of] personal jurisdiction over a person, who acts directly or by an agent, as to the claim for relief arising from [the defendant's]:

    (1)   transacting any business in the District of Columbia;

    (2)   contracting to supply services in the District of Columbia;

    (3)   causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; or

    (4)   causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia…."

D.C. Code § 13-423(a). Here, by comparison, Plaintiff's injury obviously *did not* arise from any alleged conduct by AJMN within the District, nor was Plaintiff allegedly injured in the District. *See* Compl. ¶¶ 13-54.

To the contrary, AJMN is "plainly alleged to have caused tortious injury outside the District, the lingering effects of which were felt within [Virginia] only because [plaintiff] happened to travel there after suffering an injury elsewhere." *Duarte I*, 190 F. Supp. 3d at 14

(citing *Ross v. Prod. Dev. Co.*, 736 F. Supp. 285, 289 (D.D.C. 1989) (holding that the defendant had not "'caused . . . any injury within the District' because the plaintiff, a resident of the District, was 'struck . . . at the Pentagon in Arlington, Virginia'")).  Plaintiff's allegations thus have no connection to this forum and are plainly insufficient to establish specific jurisdiction under the District's long-arm statute.

Nor do these allegations survive scrutiny under the Fourteenth Amendment, which imposes strict limits on the authority of a state court to exercise personal jurisdiction over out-of-state defendants.  *See, e.g.*, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality) ("[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.").  Under the Fourteenth Amendment's Due Process clause, a state court may exercise specific jurisdiction over a defendant only when the plaintiff's claims "arise out of or relate to" the defendant's forum activities.  *Burger King Corp. v. Rudzewiucz*, 471 U.S. 462, 472 (1985); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (for a court to exercise specific jurisdiction, "the defendant's *suit-related conduct* must create a substantial connection with the forum State" (emphasis supplied)).

Plaintiff can offer, and has offered, no allegation to support an inference that conduct by AJMN within the District was a factual or proximate cause of his injury.  The Supreme Court and the Court of Appeals for the District of Columbia prohibit the exercise of personal jurisdiction over a defendant like AJMN under such circumstances.  *See, e.g.*, *Helicopteros*, 460 U.S. at 415-19 (finding defendant's numerous contacts with Texas were not causally related to plaintiffs' injuries in Peru and therefore insufficient to sustain personal jurisdiction in Texas courts); *Goodyear Dunlap Tires Op's, S.A. v. Brown*, 564 U.S. 915, 926-27 (2011) (finding defendant's tire sales in North Carolina were not causally related to plaintiffs' injuries in Paris

and therefore insufficient to sustain specific jurisdiction in North Carolina); *Livnat*, 2017 WL 1101106, at *9 (affirming dismissal for lack of specific jurisdiction where plaintiffs failed plausibly to plead evidence of a "link" between the defendant's alleged in-forum conduct and attacks on foreign soil that caused their specific injuries); *see also Triple Up Limited v. Youku Tudou, Inc.*, No. 16-CV-159, 2017 WL 354093, at *9-10 (D.D.C. Feb. 22, 2017) (dismissing claims for lack of specific jurisdiction where defendant's U.S. contacts were not causally related to plaintiff's alleged injury).

For these reasons, Plaintiff has failed to plead facts sufficient to allow this Court to assert specific jurisdiction over AJMN.

## II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P 12(B)(5) FOR IMPROPER SERVICE OF PROCESS.

Plaintiff has made no attempt to comply with those requirements of Rule 4 of the Federal Rules of Civil Procedure that regulate service upon a foreign defendant.   This failure to effectuate proper service of process constitutes an independent ground for dismissal of the Complaint. *See Stinecipher v. United States*, 239 F.R.D. 282, 283 (D.D.C. 2006) (dismissing a claim due to improper service); *Fraser v. High Liner Foods (USA), Inc.*, No. 08-1562(L), 2009 WL 1951894, at *3 (Fed. Cir. Sept. 8, 2009) (affirming dismissal of claims where the "record indisputably shows that [the defendant] was never properly served with a summons and complaint in this matter, nor did [the defendant] waive service.").

Proper service is a constitutional due process right necessary to acquire jurisdiction over a defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co. Ltd.*, 484 U.S. 97, 104 (1987); *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012).   The failure to effectuate proper service cannot be cured simply because the defendant otherwise receives notice of the suit.   *Colston v. First Guarantee Commercial Mortg. Corp.*, 665 F. Supp. 2d 5, 9 (D.D.C. 2009) ("While the

purpose of service is to give a defendant notice of the claims against it, notice alone cannot cure an otherwise defective service." (citation and internal quotations omitted)); *Bender v. Broadcom Corp.*, No. 09-CV-1147, 2009 WL 3571286, at *3-4 (N.D. Cal. 2009) (service of process ineffective even though the defendant's in-house counsel became aware of the suit).   To the contrary, improper service may be excused only if the plaintiff shows "exceptional circumstances that were beyond [the plaintiff's] control." *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 591 (S.D.N.Y. 2006) (citations and internal quotations omitted).  No such "exceptional circumstances" exist here.

The procedural options that were available to Plaintiff—all apparently disregarded by him—are clearly set forth in the Federal Rules of Civil Procedure.  *See Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 867 (8th Cir. 2000) ("[S]ervice of process in federal diversity actions is procedural, and therefore, governed by the Federal Rules.").  Specifically, the Rules provide for service "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt," Fed. R. Civ. P. 4(f)(c)(ii), or "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction," Fed. R. Civ. P. 4(f)(2)(a).[6]  The Plaintiff failed to comply, or even to attempt to comply, with either provision.[7]

---

[6]    Fed. R. Civ. P. 4(h)(2) governs service of "a corporation, partnership, or association" outside the United States and provides that service must be effected "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."   The procedures available to Plaintiff under Rule 4(f) are further limited because he sought no leave from this or any other Court in effecting service.  Since Qatar is not a signatory to The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, no "internationally agreed means of service that is reasonably calculated to give notice" were available to Plaintiff, Fed. R. Civ. P. 4(f)(1), and he made no effort to ascertain and comply with those provisions of Qatari law regulating service of process.

[7]    Nor did Plaintiff comply with the provision of Fed R. Civ. P. 4(d) in seeking a waiver of the service requirement.  Although Plaintiff included such a form in his deficient mailing to AJMN, he failed to follow two of the essential requirements of Fed. R. Civ. P. 4(d)(1), i.e., to transmit a waiver form in "2 copies . . . and [with] a prepaid means for returning the form[;]" as

In disregard of the requirements of Fed. R. Civ. P. 4(f)(c)(ii), Plaintiff's counsel, and not the clerk of the court, dispatched the DHL package meant to effect service,[8] and Plaintiff failed to file sufficient proof that service was received by someone qualified to accept it on behalf of AJMN.[9]  *See* ECF No. 7 & 7-1.  In fact, such a showing would not be possible here, as the recipient of the DHL package containing the Summons and Complaint—Azza Abdallah El Hadi—was not authorized under Qatari law to accept service of process.  *See* Al-Muftah Decl. ¶ 14; Declaration of Mohammed A. Al-Ansari ("Al-Ansari Decl.") ¶¶ 1-4 & 6 (dated Apr. 6, 2017).  Moreover, to effectuate service in accordance with Fed R. Civ. P. 4(f)(2)(C)(ii), the Plaintiff was also required to file an Affidavit Requesting Foreign Mailing—something that he conspicuously failed to do.  *See The U.S. District Court for the District of Columbia Attorney Manual For Service of Process on A Foreign Defendant,* § II B(1)(b)(1) & (2).  Having adhered to none of the requirements of Fed. R. Civ. P. 4(f)(c)(ii), Plaintiff obviously cannot rely on this Rule in support of any contention that service was properly made.

Nor did Plaintiff properly effectuate service under Fed. R. Civ. P. 4(f)(2)(A), which permits international service of process in accordance with a "foreign country's law for service."

---

well as to identify "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. Rule Civ. P. 4(d)(1).

[8]      *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 128 (D.D.C. 2013) (holding that service was ineffective where the plaintiff, and not the clerk of the court, mailed the complaint and summons); *Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co.*, 878 F. Supp. 2d 1252, 1263 (S.D. Ala. 2012) (same); *J.B. Custom, Inc. v. Amadeo Rossi, S.A.*, No. 10-CV-326, 2011 WL 2199704, at *2 (N.D. Ind. June 6, 2011) (same); *Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp. 2d 339, 342 (S.D.N.Y. 2008) (same).

[9]      *Hilska v. Jones*, 217 F.R.D. 16, 22 (D.D.C. 2003) ("District of Columbia Rules of Civil Procedure require a return receipt signed by either defendant Jones or another individual with an accompanying affidavit demonstrating that the individual meets the appropriate qualifications for receipt of process.") (citation and internal quotations omitted); *Fraser*, 2009 WL 1951894, at *3 (holding that service was ineffective, in part, because the claims and summons were left with the receptionist and not anyone that can be properly served under the Federal Rules).

*Fujitsu Ltd. v. Belkin Intern., Inc.*, 782 F. Supp. 2d 868, 874-82 (N.D. Cal. 2011) (ruling that service of process on Taiwanese corporations was insufficient under Fed. R. Civ. P. 4(f)(2)(A) because it did not comport with Taiwanese law); *Ansell Healthcare*, 545 F. Supp. 2d at 342 (holding that plaintiffs failed to comply with Fed. R. Civ. P. 4(f)(2)(A) because they failed to service process in accordance with Thai law). In this case, Plaintiff's attempt to serve AJMN failed entirely to comply with Qatari law. *See* Al-Ansari Decl ¶¶ 1-7. None of the documents were translated into Arabic, provided in duplicate, or signed by the party who attempted to serve AJMN, as Qatari law requires. *Id.*; *see also* Al-Muftah Decl. ¶¶ 13-14. Plaintiff also failed to follow Qatar's Civil and Commercial Procedure Law, which requires that "the Police or any authority designated by the Chief of the Supreme Judiciary Council. . . ." effect any legal notification. Al-Ansari Decl. ¶ 2. Finally, under Qatari law, a legal notice must be delivered to a company's chairman of the Board of Directors, manager, joint partner, or a representative of an individual serving in one of these capacities, and then an acknowledgement of receipt must be signed, identifying by name, title, and capacity of the recipient of the service. *Id.* ¶ 5. Plaintiff also ignored this requirement.

## III. ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

Plaintiff elected to resolve any disputes relating to his employment contract with AJMN under Qatari law, in a Qatari court of competent jurisdiction. Al-Muftah Decl. Ex. D at ¶ 19; *see also* Al-Ansari Decl. ¶¶ 22-24. To the extent that his claims are not barred by the comprehensive release that he signed when he resigned from AJMN in 2016 (*see* Al-Muftah Decl. Ex. F at ¶ 2), a Qatari court will need to consider evidence that is drawn entirely from sources in the Middle East. The witnesses who, Plaintiff claims, were responsible for ensuring his safety in Egypt, or neglected to tell him that the Morsi government had fallen and the Sisi government seized power,

are all located either in Qatar or Egypt.  All relevant documents can be found there as well. Under the circumstances, this Court should exercise its discretion to dismiss this case so that it may be heard in the proper forum initially chosen by the parties.

The doctrine of *forum non conveniens* "presents one of the rare occasions where a court may dismiss a case on prudential grounds prior to assessing its own jurisdiction over the matter." *MBI Grp., Inc.*, 558 F. Supp. 2d at 27; *see also Sinochem Intern. Co. Ltd. v. Malaysian Intern. Shipping. Corp.*, 549 U.S. 422, 423 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").  A *forum non conveniens* determination typically involves a three-step analytic exercise: "'[a] court first determines whether there is an adequate alternative forum and, if so, then proceeds to balance both private interest factors and public interest factors in favor of the respective forums.'" *MBI Grp., Inc.*, 558 F. Supp. 2d at 26 (*quoting Jackson v. American Univ., Cairo*, 52 Fed. Appx. 518, 518 (D.C. Cir. 2002) (additional citation omitted).  This analytic exercise is less demanding where, as here, the parties' dispute is within the scope of a valid, enforceable forum selection clause requiring the dispute to be heard in another forum (Qatar), applying foreign law (the law of Qatar), and plaintiff himself chose not to file his claims in his home forum (Virginia).  *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. Of Tex.*, 134 S. Ct. 568, 581-83 (2013) (Because a forum selection clause "may have figured centrally in the parties negotiations" and "may, in fact, have been a critical factor in their agreement to do business together in the first place," the court should enforce a valid forum selection clause "[i]n all but the most unusual cases."); *Sinochem Int'l Co., Ltd.*, 549 U.S. at 430 ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's

choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." (citation and internal quotations omitted)).

### A.   Courts Have Routinely Dismissed Analogous Employee Disputes In Favor Of Adjudication In Qatar, As An Adequate Alternative Forum.

Recent decisions of the federal courts have recognized the independence of the Qatari judicial system and its ability to fairly resolve employment disputes like Plaintiff's. Indeed, under circumstances analogous to those presented here, involving Qatari employers and foreign employment relationships, the courts have not hesitated to find that Qatar is an adequate alternative forum. Where, as here, moreover, the disputed employment relationship is governed by Qatari law, courts have routinely found that the relevant interest factors supported dismissal on *forum non conveniens* grounds, in favor of resolution of the dispute in Qatar. *See, e.g., Ghannoum v. Qatar Airways Q.C.S.C.*, No. 13-CV-2994, 2014 WL 4354436 (S.D.Tx. Sept. 2, 2014); *Kinney v. Occidental Oil & Gas Corp.*, No. 01-CV-05185, 2003 U.S. Dist. LEXIS 28610 (C.D.Ca. May 8, 2003), *aff'd,* 109 Fed. Appx. 135 (9th Cir. 2004). The same result should follow here.

In *Ghannoum*, the plaintiff, a resident of Texas, was hired to work as a pilot for Qatar Airways. 2014 WL 4354436, at *1. As here, the defendant was alleged to be entirely owned by the government of Qatar, and plaintiff's employment was based in Qatar. *Id.* While employed in Qatar, Ghannoum claimed that the defendant's C.E.O. "made demeaning and false allegations" about him, "threatened to 'black list' plaintiff all over the Persian Gulf," and eventually terminated him, withholding pay and the return of his passport. *Id.* Plaintiff was ultimately deported from Qatar and allegedly not permitted to return for a period of two years. *Id.* He brought suit in Texas, alleging "tortious interference with prospective relationship,"

intentional infliction of emotional distress, defamation, and related claims.  *Id.*  The defendant moved to dismiss on *forum non conveniens* grounds.  *Id.*

In determining that Qatar was an adequate alternative forum, the *Ghannoum* court relied upon and accepted the opinions of the Airway's Qatari law expert, who averred that: (i) "Qatar has an independent court system that provides due process of law;" (ii) "the fact that Defendant is owned entirely by the Qatari government should have no influence on an action brought by Plaintiff in Qatar;" and that (iii) while "the Qatari Civil Code generally does not recognize specific causes of action, it follows the general principle that a person is liable for damages if he injures another, and thus, Plaintiff may be able to recover on his claims in Qatar."  *Id.* at *3.  The declaration provided by AJMN's expert on Qatari law reaches the same conclusions.  *See* Al-Ansari Decl. ¶¶ 8-21, 25-26.

In evaluating the private interest factors at issue, the *Ghannoum* court took notice of the fact that plaintiff's claims came within the scope of a valid forum selection clause, which clearly specified, as does the agreement at issue here, that plaintiff's employment "shall be governed by the laws of the State of Qatar [and] [a]ny dispute shall be referred to the Qatari Courts and shall be construed in accordance with its laws."  2014 WL 4354436, at *4.  Because plaintiff's claims related to his employment, the court held that the forum selection clause obviously applied and, thus, that the private interest factors weighed in favor of the case being adjudicated in Qatar.  *Id.* The same considerations plainly obtain here.  *See* Al-Ansari Decl. ¶¶ 22-24.  Finally, in deciding that the public interest factors also favored adjudication of plaintiff's claims in Qatar, the *Ghannoum* court found that: (i) Qatar had a more substantial interest in the controversy that the Southern District of Texas; (ii) defendant was organized under Qatari law, had its principal place of business in Qatar, and was owned by the Qatari government; (iii) the relationship between the

plaintiff and the defendant arose under an employment contract that contained a Qatari choice-of-law provision and choice-of-forum clause; and (iv) all of the events allegedly giving rise to plaintiff's injury occurred in Qatar.  2014 WL 4354436, *4-5.  Here, too, the same public interest factors weigh heavily in favor of dismissal.  In light of Qatar's superior interest and nexus to the claims, the *Ghannoum* court conditionally granted defendant's motion to dismiss on *forum non conveniens* grounds.  *Id.* at *6.[10]

The *Ghannoum* court is not alone in dismissing an employment dispute that required resolution in a Qatari court.  In *Kinney*, the plaintiff, a resident of Texas, brought an action against her Qatari employer in California, alleging claims for discrimination, retaliation and unsafe working conditions, among other claims.  2003 U.S. Dist. LEXIS 28610, at *1.  As here, the *Kinney* plaintiff had expressly agreed in her employment contract that all disputes relating to her employment "shall be governed by the laws of the State of Qatar."  *Id.* at *6 (concluding that the laws of Qatar therefore governed the action).  In determining that Qatar was an adequate alternative forum, the *Kinney* court again relied upon, and accepted, the averments of an expert on Qatari law, who confirmed that: (i) "Qatar has an independent court system that provides due process of law;" (ii) "Qatari law provides a developed system of civil rights for employees, including mandatory minimum terms and conditions of employment;" and (iii) that plaintiff would be able to bring her claims against the defendant in Qatari courts.  *Id.* at *4-6.  The Qatari

---

[10]    The court granted such relief even though Ghannoum argued that he was barred from reentering Qatar—a fact not alleged or at issue here.  The *Ghannoum* court therefore ruled that it would permit the case to be reinstated if, despite plaintiff's diligent efforts, with the cooperation of the defendant, he was denied reentry into Qatar to pursue his claims.  *Id.*  Here, of course, Plaintiff has not alleged, and cannot allege, that he is precluded from returning to Qatar to pursue his claims, even if such a claim were sufficient—which it is not—to defeat a *forum non conveniens* motion.  *MBI Grp., Inc.*, 558 F. Supp. 2d at 31 ("[T]he mere fact that [plaintiff] could not personally travel to the proceedings in Cameroon without fear of reprisal does not establish that Cameroon is an inadequate alternative forum.  And there is no suggestion that the litigation cannot go forward in Cameroon absent [plaintiff's] physical presence there[.]").

law expert proffered by AJMN has expressed identical opinions in this action.  *See* Al-Ansari

Decl. ¶¶ 8-15, 19-20, 25-26.

In weighing the private and public interest factors, the *Kinney* court followed the

Supreme Court's guidelines in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), which

instruct courts to evaluate the following factors:

> Public Interest Factors: "(1) residence of the parties and witnesses; (2) availability
> of compulsory process for attendance of witnesses; (3) costs of bringing willing
> witnesses and parties to the place of trial; (4) access to physical evidence and
> other sources of proof; (5) enforceability of judgments; and (6) all other practical
> problems that make trial of a case easy, expeditious and inexpensive."

> Private Interest Factors:  "(1) burden on local courts and juries; (2) local interest
> in having the matter decided locally; and (3) familiarity with governing law and
> avoidance of unnecessary problems in conflicts of law or application of foreign
> law."

*Kinney*, 2003 U.S. Dist. LEXIS 28610, at *6-7 (citing *Gulf Oil Corp.*, 330 U.S. at 508) (internal

quotations omitted).   These factors weighed heavily in favor of adjudication of the *Kinney*

plaintiff's claims in Qatar, especially where, as here: (i) the alleged tortious acts and omissions

occurred in Qatar; (ii) the majority of the likely witnesses and evidence were located in Qatar;

(iii) there was no means for the *Kinney* court to compel the testimony of the likely foreign

witnesses; and (iv) Qatar—unlike California—had a "significant interest" in adjudicating

plaintiff's claims and "in monitoring the actions of corporations conducting business within its

borders." *Id.* at *7-9.

In light of these facts, the *Kinney* court conditionally granted defendant's motion to

dismiss on *forum non conveniens* grounds, upon defendant's stipulation to jurisdiction in Qatar

and to toll the statute of limitations applicable to plaintiff's claims.  *Id.* at *8.  Here, by contrast,

AJMN is plainly subject to the jurisdiction of the Qatari courts, and Plaintiff is not barred from

pursuing his action in Qatar.  Al-Ansari Decl. ¶¶ 19-20, 25-26.  And even if Plaintiff could

demonstrate that Qatari law were less favorable to his case than U.S. law, that too would be an insufficient basis to deny AJMN's *forum non conveniens* motion.  *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678 (D.C. Cir. 1996) ("A foreign forum is not inadequate merely because it has less favorable substantive law[.]") (internal citations omitted).

     **B.**     **The Private And Public Interest Factors Weigh More Substantially In Favor Of Adjudication Of This Action In Qatar, Than In Previously Dismissed Actions.**

All of the relevant public and private interest factors weigh heavily in favor of adjudicating this matter in Qatar.  As in *Ghannoum* and *Kinney*, the Plaintiff's claims are governed by his employment contract, which states that all disputes arising from his employment must be adjudicated in a Qatari court under Qatari law.  Al-Muftah Decl. Ex. D at ¶ 19; Al-Ansari Decl. ¶¶ 22-24.   Just as his contract references Qatari law, so too does the "Acknowledgement of Full and Final Settlement" that he signed, in which he accepted a substantial payment in accordance with Qatari Labor Law "for any and all present, or possible future claim(s) (if any) related to my employment with Aljazeera its termination or otherwise and, to the fullest extent permitted by applicable law," and stated that he "release[s] and hold[s] harmless Aljazeera and its subsidiaries from and against any claims, losses, costs, damages or expenses (including legal fees) incurred or to be incurred by Aljazeera or its subsidiaries, whether arising in the course of or after my employment with Aljazeera, whether such claims are in contract, tort or under any applicable law(s)."  Al-Muftah Decl. Ex. F at ¶ 2.

In addition to these compelling factors, this Court can readily discern from the allegations of the Complaint alone that: (i) nearly all of the likely evidence and witnesses relevant to this dispute are located in Qatar; (ii) those witnesses are located outside of the reach of this Court's compulsion powers; (iii) Qatari law applies to this dispute; and (iv) Qatar has a far greater interest in adjudicating this dispute and regulating the conduct of the businesses operating within

its borders than does the District.  *See Ghannoum*, 2014 WL 4354436, at *4-5; *Kinney*, 2003 U.S. Dist. LEXIS 28610, at *7-9.

Finally, as in *Ghannoum* and *Kinney*, AJMN has proffered the opinions of an expert on Qatari law who has described: (i) the independence of the Qatari courts; (ii) the due process rights that would be afforded to the Plaintiff in those courts; (iii) the fact that the Plaintiff would receive a fair hearing notwithstanding the fact that AJMN is a Qatar-based company, and (iv) the Plaintiff's ability to pursue his claims in Qatari courts.  *Compare* Al-Ansari Decl ¶¶ 8-26 *with Ghannoum*, 2014 WL 4354436, at *3, & *Kinney*, 2003 U.S. Dist. LEXIS 28610, at *5-6. Additionally, this Court does not owe Plaintiff's choice of forum substantial deference, *see Sinochem Int'l Co., Ltd.*, 127 S. Ct. at 1191, since he did not choose to bring this action in his home forum of Virginia (Compl. ¶ 1), or in a Qatari court readily able to apply Qatari law, as required by his employment contract (*see* Al-Muftah Decl. Ex. D at ¶ 19; Al-Ansari Decl. ¶¶ 22-26).

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) and on *forum non conveniens* grounds.  Pursuant to Local Rule 7(f), AJMN respectfully requests an oral hearing on this motion.

Dated:  April 10, 2017                                          Respectfully submitted,

/s/ Sara Z. Moghadam
Sara Z. Moghadam (D.C. Bar No. 463862)
DLA PIPER LLP (US)
500 Eighth Street, N.W.
Washington, DC 20004
Tel: (202) 799-4000
Fax: (202) 799-5000
sara.moghadam@dlapiper.com

/s/ Kevin Walsh
Kevin Walsh*
Douglas Walter Mateyaschuk*
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, N.Y. 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
kevin.walsh@dlapiper.com
douglas.mateyaschuk@dlapiper.com

*Admitted *Pro Hac Vice* (Minute Orders, Mar. 17, 2017(Cooper, *J.*))

*Attorneys for Defendant Al Jazeera Media Network*